UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| Wilfredo Perez,<br>    *Plaintiff*,<br><br>        *v.*<br><br>United States of America,<br>    *Defendant*. | Civil No. 3:09cv30 (JBA)<br><br><br><br>March 30, 2012 |

RULING ON MOTION TO VACATE, SET ASIDE, OR CORRECT SENTENCE

Petitioner Wilfredo Perez, proceeding *pro se*, moves under 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence on the grounds that (1) the Government, through its conduct during his trial and its presentation of evidence, and the Court, through its instructions to the jury, constructively amended the Indictment in violation of his Fifth and Sixth Amendment rights, and (2) that his trial counsel, Attorney Reeve, was constitutionally ineffective by (a) denying Mr. Perez the right to testify at trial and before the grand jury, (b) denying Mr. Perez the right to call certain witnesses at trial, (c) failing to object to the constructive amendment of the Indictment, and (d) failing to request a limiting instruction to curb the prejudicial effect of co–defendants' testimony. For the reasons that follow, Mr. Perez's petition will be denied.

I.    Factual and Procedural Background

On January 10, 2002, a grand jury returned an indictment (3:02cr007 Indictment [Doc. # 1]) against Wilfredo Perez, Jose Antonio Perez, Santiago Feliciano, and Fausto Gonzalez, charging Petitioner with conspiracy to commit interstate murder–for–hire in violation of 18 U.S.C. § 1958 (Count One), interstate travel to commit murder–for–hire in violation of 18 U.S.C. §§ 1958 & 2 (Count Two), use of a facility in interstate commerce in

furtherance of murder–for–hire in violation of 18 U.S.C. §§ 1985 & 2 (Count Three), murder in furtherance of a racketeering enterprise in violation of 18 U.S.C. §§ 1959 & 2 (Count Four), and use of a firearm during and in relation to a crime of violence that resulted in death in violation of 18 U.S.C. §§ 924(c), 924(j)(1), & 2 (Count Five), all in connection with the murder of Theodore Casiano. On June 29, 2004, the jury returned a verdict [Doc. # 1049] convicting Petitioner of Counts One, Two, Four, and Five, and acquitting him of Count Three.

On July 7, 2004, after the penalty phase of Petitioner's trial, the jury returned a special verdict [Doc. # 1080] determining that Petitioner should be sentenced to life imprisonment without possibility of release. On August 18, 2005, the Court denied [Doc. # 1390] Petitioner's motion for a new trial. The Court sentenced [Doc. # 1397] Petitioner on September 28, 2005, imposing a sentence of life imprisonment on Counts One, Two, and Four and a sentence of five years' imprisonment on Count Five to run consecutively with Counts One, Two, and Four. The Second Circuit affirmed Petitioner's conviction, *United States v. Perez*, 256 F. App'x 383 (2d Cir. 2007), and the Supreme Court denied his petition for writ of certiorari, *Perez v. United States*, 552 U.S. 1290 (2008).

II.     Discussion

To obtain collateral relief under 28 U.S.C. § 2255, Petitioner must show that his sentence "was imposed in violation of the Constitution or laws of the United States." 28 U.S.C. § 2255. "As a general rule, relief is available under § 2255 only for constitutional error, a lack of jurisdiction in the sentencing court, or an error of law that constitutes a fundamental defect which inherently results in a complete miscarriage of justice." *Napoli v. United States*, 32 F.3d 31, 35 (2d Cir. 1994) (internal quotation marks and citations omitted).

An evidentiary hearing is not required where the record plainly demonstrates that the moving party is not entitled to relief and the court concludes that the petitioner's claims are truly without merit. *See United States v. Aiello*, 900 F.2d 528, 534 (2d Cir. 1990) ("Where a petition omits meritorious allegations that can be established by competent evidence, it would go too far to say that it was error for the district court to have failed to conduct a full evidentiary hearing.")

    A.    Constructive Amendment

Petitioner claims that although he was indicted for crimes related to use of interstate commerce to commit murder in violation of 18 U.S.C. § 1958 and use of a firearm in relation to a crime of violence in violation of 18 U.S.C. § 942(c), the Government at trial "abandon[ed] the grand jury indictment . . . and conducted a bloody murder trial" against him in violation of his Fifth and Sixth Amendment rights. (Mem. Supp. [Doc. # 1–2] at 7.) He argues that the prosecutor disregarded the elements of the offenses under 18 U.S.C. § 1958 and "conducted a trial base[d] on [c]onspiracy to commit murder [and] murder," thereby constructively amending the indictment. (*Id.* at 9.) Petitioner also claims that the Court constructively amended the indictment by instructing the jury in connection with Count Five on the elements of murder under federal law, 18 U.S.C. § 1111. (*Id.* at 20–21.)

"Under the Fifth Amendment, a criminal defendant has the right to be tried only on the charges contained in the indictment returned by a grand jury. . . . An unconstitutional amendment of the indictment occurs when the charging terms are altered, either literally or constructively, such as when the trial judge instructs the jury." *United States v. Helmsley*, 941 F.2d 71, 89 (2d Cir. 1991) (citing *Stirone v. United States*, 361 U.S. 212, 216–17 (1960); *Ex Parte Bain*, 121 U.S. 1 (1887)). "A constructive amendment occurs when the government's

3

presentation of evidence and the district court's jury instructions combine to modify essential elements of the offense charged to the point that there is a substantial likelihood that the defendant may have been convicted of an offense other than the one charged by the grand jury." *United States v. Vebeliunas*, 76 F.3d 1283, 1290 (2d Cir. 1996) (internal quotation marks and citations omitted).

Counts One through Three charged Petitioner with conspiracy to commit interstate murder–for–hire, interstate travel to commit murder–for–hire, and use of a facility in furtherance of murder–for–hire, all in violation of 18 U.S.C. § 1958, which reads in part:

> Whoever travels in or causes another . . . to travel in interstate or foreign commerce . . . with intent that a murder be committed in violation of the laws of any State or the United States as consideration for the receipt of . . . anything of pecuniary value, or who conspires to do so, shall be fined under this title or imprisoned for not more than ten years, or both; and if personal injury results, shall be fined under this title or imprisoned for not more than twenty years, or both; and if death results, shall be punished by death or life imprisonment, or shall be fined not more than $250,000, or both.

18 U.S.C. § 1958(a). The elements of an offense under this section are:

> (1) traveling or causing another to travel in interstate or foreign commerce, or using or causing another to use the mail or other facility of interstate or foreign commerce; (2) with intent that a murder be committed in violation of the laws of any State or the United States; and (3) as consideration for the receipt of pecuniary value.

*United States v. Sharpe*, 193 F.3d 852, 863 n.6 (5th Cir. 1999). Where, as in Petitioner's trial, the Government seeks the death penalty for a violation of Section 1958, it must also prove that death resulted from the defendant's violative conduct. 18 U.S.C. § 1958(a).

Count Four charged Petitioner with murder in furtherance of a racketeering enterprise in violation of 18 U.S.C. § 1959(a), which reads in part:

4

> Whoever, as consideration for the receipt of, or as consideration for a promise or agreement to pay, anything of pecuniary value from an enterprise engaged in racketeering activity, or for the purpose of gaining entrance to or maintaining or increasing position in an enterprise engaged in racketeering activity, murders, kidnaps, maims, assaults with a dangerous weapon, commits assault resulting in serious bodily injury upon, or threatens to commit a crime of violence against any individual in violation of the laws of any State or the United States, or attempts or conspires so to do, shall be punished . . . for murder, by death or life imprisonment.

The essential elements of an offense under this section are:

> (1) that the organization was a RICO enterprise, (2) that the enterprise was engaged in racketeering activity as defined in RICO, (3) that the defendant in question had a position in the enterprise, (4) that the defendant committed the alleged crime of violence, and (5) that his general purpose in so doing was to maintain or increase his position in the enterprise.

*United States v. Rahman*, 189 F.3d 88, 126 (2d Cir. 1999). Petitioner's indictment charged him with murder in aid of a racketeering enterprise, therefore in order to satisfy element four of this offense, the Government had to prove beyond a reasonable doubt that Petitioner committed or aided and abetted murder. Count Five of the indictment charged Petitioner with causing Mr. Casiano's death through the use of a firearm during a crime of violence in violation of 18 U.S.C. § 924(j), which provides that if a person, during and in relation to any crime of violence, "causes the death of a person through the use of a firearm, shall . . . if the killing is a murder (as defined in [18 U.S.C. § 1111]), be punished by death or by imprisonment for any term of years or for life."

Each of these counts as charged in the indictment includes murder as an essential element. For Counts One through Three, the Government was required to prove beyond a reasonable doubt intent that a murder was committed and the death of Mr. Casiano resulted. *See* 18 U.S.C. § 1958(a); *Sharpe*, 193 F.3d at 863 n.6. On Count Four, the

5

Government was required to prove beyond a reasonable doubt that Petitioner committed or aided and abetted the murder of Mr. Casiano. *See* 18 U.S.C. § 1959(a); *Rahman*, 189 F.3d at 126. On Count Five, the Government was required to prove beyond a reasonable doubt that Petitioner caused the murder of Mr. Casiano through the use of a firearm. *See* 18 U.S.,C. § 924(j). The Government's introduction of evidence of the murder of Mr. Casiano therefore did not "modify essential elements of the offense[s] charged" so as to constructively amend the indictment. *Vebeliunas*, 76 F.3d at 1290.

With respect to the Court's instruction on Count Five, the elements of the violation of 18 U.S.C. § 942(j) charged in the indictment include that the killing constitute murder as defined in 18 U.S.C. § 1111. As murder in violation of 18 U.S.C. § 1111 is an essential element of the charged violation, the Court did not modify any of the essential elements of the offense by instructing the jury on the definition of murder under 18 U.S.C. § 1111. Petitioner's claims as to constructive amendment of the indictment are therefore without merit.

      B.      Ineffective Assistance of Counsel

A claim of ineffective assistance of counsel is assessed under the two–pronged standard articulated in *Strickland v. Washington*, 466 U.S. 668 (1984). The first prong considers whether counsel's performance was objectively unreasonable "under prevailing professional norms." *Id.* at 688. To satisfy this element, an error must be "so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment," *id.* at 687, and counsel's performance must have been "outside the wide range of professionally competent assistance," *id.* at 690. Second, the petitioner must affirmatively prove prejudice by showing that counsel's errors were so serious that they "deprive[d] the

defendant of a fair trial" and that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 687, 694.

"A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.* at 689. "[T]he failure to make a meritless argument does not rise to the level of ineffective assistance, and 'strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable.'" *United States v. Kirsh*, 54 F.3d 1062, 1071 (2d Cir. 1995) (quoting *Strickland*, 466 U.S. at 690.) "[A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Strickland*, 466 U.S. at 689.

### 1. *Not allowing Petitioner to testify at trial*

Petitioner argues that his counsel was constitutionally ineffective by "rest[ing] the case without calling him to the stand, despite his repeated indication that he wanted to testify." (Mem. Supp. at 25.) He claims that "from the beginning of the trial, Mr. Reeve and Perez [] argued whether or not he should[] take the stand and testify on his own behalf . . . [and] the trial lasted for [t]wenty [f]our days . . . but . . . Mr. Reeve never prepared Mr. Perez to take the stand or discuss the strategic implications of testifying or not testifying." (*Id.*) He further adds that when he asked Attorney Reeve what to do and told him "I'm facing the

7

death penalty, I must go all in all. I don't have anything to lose by testifying," Attorney Reeve responded "we have over sixty (60) percent chance to win this trial." (*Id.* at 26.)

"[A]ny claim by the defendant that defense counsel has not discharged this responsibility—either by failing to inform the defendant of the right to testify or by overriding the defendant's desire to testify—must satisfy the two–prong test established in *Strickland.*" *Brown v. Artuz*, 124 F.3d 73, 79 (2d Cir. 1997). With respect to the first prong, whether Attorney Reeve's performance was objectively unreasonable, the Second Circuit held in *Chang v. United States*, 250 F.3d 79, 84–85, that a petitioner's "own blanket statements" that he was prevented by his counsel from testifying are insufficient to warrant a hearing on whether counsel's assistance was outside the range of that which is professionally competent. In *Chang*, however, the court had the benefit of "a detailed affidavit from trial counsel credibly describing the circumstances concerning appellant's failure to testify," *id.* at 85, whereas Attorney Reeve has declined to provide such an affidavit here (Response [Doc. # 16] at 17 n.3).

Attorney Reeve's failure to provide Petitioner with an opportunity to testify, according to Petitioner's conclusory allegations, is error that could be considered to fall below the wide range of professionally competent assistance. A hearing is not warranted on this claim, however, because the record plainly demonstrates that Petitioner is unable to satisfy the second *Strickland* prong. *See Brown*, 124 F.3d at 80 ("[E]ven if Brown's conclusory allegations raised an issue on the performance prong of *Strickland* . . . , Brown cannot satisfy the prejudice prong of the *Strickland* test."). In *Brown*, the Second Circuit held that the petitioner–appellant could not satisfy the prejudice prong where he acknowledged "that the only reason he wanted to testify was to demonstrate that the

8

prosecution failed to disprove his defense of justification beyond a reasonable doubt." *Id.* Here, Petitioner offers no description whatsoever in either his petition or his reply of what he would have done with his opportunity to testify; he states only that he "d[id]n't have anything to lose by testifying" (Mem. Supp. at 26).

Without offering any explanation as to what he would have testified about, or how that could have possibly changed the outcome of his trial, Petitioner cannot demonstrate that but for Attorney Reeve's alleged advice about his testifying, there is a reasonable probability that the outcome of the trial would have been different. According to the Government, had Petitioner testified, he would have faced "withering cross–examination on his criminal history, membership in the Perez Organization, motive to kill Mr. Casiano and a host of other related and problematic issues." (Response at 19.) Indeed Petitioner's testimony would have exposed him to extensive and potentially very damaging cross–examination. *See United States v. Payton*, 159 F.3d 49, 58 (2d Cir. 1998) ("When a defendant offers an innocent explanation he 'opens the door' to questioning into the truth of his testimony, and the government is entitled to attack his credibility on cross–examination. . . . A defendant has no right to avoid cross–examination into the truth of his direct examination, even as to matters not related to the merits of the charges against him.") In light of the Government's extensive evidence against Petitioner and without any stated goal for his testimony in the face of damaging cross–examination and impeachment, Petitioner was not prejudiced by the claimed failure of his attorney to allow him to testify. Petitioner is therefore not entitled to relief on this ground.

### 2. *Not allowing Petitioner to testify before the Grand Jury*

Petitioner also argues that his counsel was constitutionally ineffective by advising him to "ignore" the Government's letter that Petitioner was the target of a grand jury indictment because doing so "perpetually disabled any further approaches to the government as to any negotiations that would[] have benefit Mr. [P]erez in exchange for any information that Petitioner could [] supply to the grand jury investigation." (Mem. Supp. at 35–37.) Deficiencies in grand jury proceedings, however, are not cognizable on habeas review. *United States v. Mechanik*, 475 U.S. 66, 70 (1986) ("[T]he petit jury's subsequent guilty verdict means not only that there was probable cause to believe that the defendants were guilty as charged, but also that they are in fact guilty as charged beyond a reasonable doubt. Measured by the petit jury's verdict, then, any error in the grand jury proceeding connected with the charging decision was harmless beyond a reasonable doubt."); *see also Burden v. Filion*, 421 F. Supp. 2d 581, 588–89 (W.D.N.Y. 2006) ("To the extent Burden is asserting defects in the grand jury proceeding, such a claim is not cognizable on habeas review because Burden was convicted by a jury after a trial. The trial jury's guilty verdict necessarily renders any irregularities before the grand jury harmless as it establishes not only that there existed probable cause to indict the defendant, but also that the defendant was 'in fact guilty as charged beyond a reasonable doubt.'") (quoting *Mechanik*, 475 U.S. at 70). Petitioner therefore is not entitled to relief on this ground.

### 3. *Failure to call certain witnesses at trial*

Petitioner argues that his counsel was ineffective in failing to call as witnesses at trial Maritza DeJesus, Damaris Hernandez, Jose Figueroa, Maria DeJesua, Enrique Ayala, Elba Ramirez, and Francisco Caparro. He claims that Attorney Reeve, "without consulting with

10

Petitioner," rested the case "without presenting favorable witnesses, to rebut the prosecutor witness testimony that accused Perez to be one of the persons who hire[d] them to commit the murder for hire." (Mem. Supp. at 32–33.)

"The decision whether to call any witnesses on behalf of the defendant, and if so which witnesses to call, is a tactical decision of the sort engaged in by defense attorneys in almost every trial." *United States v. Smith*, 198 F.3d 377, 386 (2d Cir. 1999) (internal quotation marks and citations omitted). "[T]he tactical decision of whether to call specific witnesses—even ones that might offer exculpatory evidence—is ordinarily not viewed as a lapse in professional representation." *United States v. Schmidt*, 105 F.3d 82, 90 (2d Cir. 1997). Attorney Reeve called five witnesses at Petitioner's trial, but did not call the seven witnesses that Petitioner believes he should have. His strategic decisions with regard to which witnesses to call, and which not to call, ordinarily are not the type of decisions that can constitute performance below the standard of professionally competent assistance under *Strickland*. Petitioner is therefore not entitled to relief on this ground.

### 4. *Failure to object to constructive amendment*

Petitioner argues that his counsel was also constitutionally ineffective in failing at trial "to object to the prosecutor['s] constructive amendment of the indictment." (Mem. Supp. at 37–38.) "[T]he failure to make a meritless argument does not rise to the level of ineffective assistance," *Kirsh*, 54 F.3d at 1071, however, and as discussed above, the indictment was not constructively amended by the Government, the Court, or both, during trial. Attorney Reeve therefore was not ineffective in failing to object to the Government's introduction of evidence of the murder of Mr. Casiano or the Court's instruction on 18 U.S.C. § 942(j). Petitioner is not entitled to relief on this ground.

### *5.   Limiting instruction regarding co–defendants' testimony*

Petitioner lastly argues that his counsel was constitutionally ineffective because after "the Prosecutor presented testimony about the violent nature of other members of the conspiracy," including acts of murder, car–jacking, and firearms violations, Attorney Reeve failed "to request an instruction limiting such evidence of violence to the defendants to which the evidence properly pertains." (Mem. Supp. at 39–41.)  He claims that in the absence of a limiting instruction, this evidence "resulted in guilt by association.  A reasonable juror in the absence of a proper instruction would conclude that Mr. Perez's co–defendants are violent and dangerous and thus Mr. Perez is as well." (*Id.* at 40–41.)

Attorney Reeve's conduct with respect to limiting instruction did not fall below the wide range of reasonable professional assistance under *Strickland* and Petitioner is unable to overcome the presumption that Attorney Reeve's actions were sound trial strategy. Petitioner specifically points to Attorney Reeve's failure to object or request a limiting instruction with respect to "evidence of a killing–for–hire planned by [co–defendant Fausto] Gonzalez and [cooperating witness Mario] Lopez" and "[o]ther evidence against a person name[d] Dargan, that included references to a multitude of weapons which they used to intimidate others." (Mem. Supp. at 39.)  In light of defense counsel's able cross–examination of cooperating witnesses, and the overall violent nature of Petitioner's proved actions, the Court does not find that Attorney Reeve committed an objectively unreasonable error under professional norms by failing to object to evidence of the violent nature of co–defendants and cooperating witnesses or requesting a limiting instruction on that evidence. In addition, the theory of the defense, as the jury was instructed, was that the murder of Mr. Casiano was committed by those other individuals who had been hired by Ollie Berrios without

Petitioner's knowledge or involvement (*see* Tr. at 2644:5–12); failure to object to evidence of the violent nature and conduct of these individuals is therefore sound trial strategy under the circumstances.  Petitioner is therefore not entitled to relief on this ground.

III.    Conclusion

For the reasons stated above, Mr. Perez's motion [Doc. # 1] to vacate, set aside, or correct his sentence is DENIED without a hearing.

IT IS SO ORDERED.

/s/
Janet Bond Arterton, U.S.D.J.

Dated at New Haven, Connecticut this 30th day of March, 2012.